UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

MICHAEL WALDEN,                                                    Plaintiff,

v.                                              Civil Action No. 4:19-cv-159-DJH-HBB

GENERAL ELECTRIC INTERNATIONAL,
INC. and COMMUNICATIONS WORKERS
OF AMERICA, AFL-CIO, CLC,                                         Defendants.

* * * * *

## MEMORANDUM AND ORDER

Plaintiff Michael Walden sued Defendants General Electric International, Inc. and Communications Workers of America, asserting claims under the Age Discrimination in Employment Act, 28 U.S.C. § 621 (ADEA); the Kentucky Civil Rights Act, Ky. Rev. Stat. § 344.010 (KCRA); and the Labor Management Relations Act, 29 U.S.C. § 185 (LMRA). (Docket No. 1) The defendants moved to dismiss for failure to state a claim (D.N. 7; D.N. 8), and Senior Judge Joseph H. McKinley dismissed Walden's LMRA and KCRA claims. (D.N. 16) Walden then amended his complaint, asserting a new LMRA claim and reasserting his age-discrimination claim under the ADEA. (D.N. 21) The defendants now move for summary judgment. (D.N. 107; D.N. 108) Walden moves for leave to file a sur-reply opposing the defendants' motion. (D.N. 117) Also pending is Magistrate Judge H. Brent Brennenstuhl's report and recommendation that the Court deny Walden's motion (D.N. 126), to which Walden timely objected (D.N. 127) For the reasons explained below, the Court will grant the defendants' motions, overrule Walden's objection, and deny Walden's motion.

## I.

Plaintiff Michael Walden has been a machine operator at the General Electric International (GE) plant in Madisonville, Kentucky, since 2011. (D.N. 113-4, PageID.1376; D.N. 113-5)

1

Walden was born in 1955 and is therefore over forty years old.  (D.N. 113-4, PageID.1329)  He is also a member of a labor union, the Communications Workers of America (the Union).   (D.N. 113-4, PageID.1459–60)  In December 2018, GE posted openings for two toolmaker positions. (D.N. 113-2)   The posting stated that applicants must have five years of tool and die-job experience.  (*Id.*)  Walden applied for the job (D.N. 113-4, PageID.1469), along with two others, Nathan Bryant and Brad Brown.  (D.N. 113-6, PageID.1563)  Both Bryant and Brown are more than 25 years younger than Walden and were under 40 at the time.  (*See* D.N. 113-7, PageID.1620)

The Union's contemporary collective bargaining agreement with GE (the CBA) stated that positions "will be awarded on the basis of Total Plant Seniority to those employees that possess the minimum qualifications."  (D.N. 113-1, PageID.1286)  Walden had the most seniority of the three toolmaker applicants and met the qualifications listed in the job posting.  (*See* D.N. 113-7, PageID.1620; D.N. 113-3)  But although it was not mentioned in the job posting, GE had, with the Union's consent, required employees to pass a written test to qualify for the toolmaker position since 2016.  (D.N. 113-6, PageID.1153–55)  The test was twenty questions long, and the passing score was 85 percent, or a maximum of three incorrect answers.  (D.N. 113-6, PageID.1556)

Brown and Bryant took the test before Walden.  (D.N. 113-6. PageID.1564–65)  After they took their tests, but before Walden took his, Union toolroom steward Kevin Christian informed GE manager Tim Riggs of a rumor that some employees were sharing the test questions and answers.  (*Id.*, PageID.1564)  After discussion, Christian and Riggs agreed that it would be fair to add five new questions to the tests.  (*Id.*)  Shortly thereafter, Walden took the new twenty-five-question test, and Riggs called Bryant and Brown back to answer the additional questions.  (*Id.* at 1571)  Despite the added questions, the passing score remained 85 percent, allowing a maximum of three wrong answers.  (*Id.*)

A short time later, GE announced that Bryant and Brown had been selected as toolmakers, but Walden had not. (D.N. 108-11, PageID.1182)  Walden claims that Riggs told him that he missed six questions, while the other two applicants missed four. (D.N. 113, PageID.1262)  But the graded tests show that Walden incorrectly answered five of the twenty-five questions, resulting in a score of 80 percent. (D.N. 108-10, PageID.1182)  Brown did not miss any questions (D.N. 108-8, PageID.1167), and Bryant only got two questions wrong, scoring 92 percent. (D.N. 108-9, PageID.1172; D.N. 116-5, PageID.2093)

Upon learning that he was not selected, Walden approached his Union steward and the Union's skilled-trades chairman about filing a grievance with GE. (D.N. 113-4, PageID.1464)  They determined that filing a grievance would be futile. (*Id.*)  But instead, the chairman secured Walden the opportunity to retest for the toolmaker job once another position opened, which occurred the following month, January 2019. (D.N. 113-27, PageID.1803)

The test for the January 2019 toolmaker openings was different from the previous test and was administered by local community colleges. (*Id.*, PageID.1798–99)  GE and the Union agreed on a new test that had both a written portion and a hands-on portion, with the scores of the two sections averaged to get the applicants' total scores. (D.N. 113-21, PageID.1753–54)  For the written portion, applicants took a test developed by the National Occupational Competency Testing Institute. (*Id.*)  After the Union noted that two of that test's sections were inapplicable to toolmaking, however, GE agreed not to score them. (D.N. 113-6, PageID.1580–81)  The January 2019 applicants took the full test, and they had their total scores recalculated by disregarding the scores on the two sections GE and the Union agreed not to count. (*See id.*)  The passing score, after averaging, was 70 percent. (D.N. 113-28, PageID.1829)  Walden claims that his Union steward said that he heard that the passing score was 75 percent (D.N. 113-4, PageID.1410–11),

but it is undisputed that 70 percent was the passing score GE ultimately applied.  (*Id.*; D.N. 113-28, PageID.1829)

Although Walden scored 87 percent on the written test (D.N. 108-15), he only scored 16 percent on the hands-on test.  (D.N. 108-16)  His combined score of 51 percent was well below the passing threshold, so he was not selected for one of the 2019 toolmaker positions.  (*See* D.N. 113-4, PageID.1461–62)  Another, younger applicant, Keith Crowley, scored 75.2 percent on the written test and 64 percent on the hands-on test, resulting in an overall score of 69.6 percent.  (D.N. 113-15)  Consistent with its standard practice, GE rounded this score up to 70 percent, so Crowley passed the test and became a toolmaker.  (D.N. 116-5, PageID.2093–34; D.N. 113-14, PageID.1704)  Crowley's original written-test score, before the two sections GE agreed not to consider were removed from the calculation, was 72.4 percent.  (D.N. 113-15, PageID.1706)  Had GE counted those sections, Crowley would have scored 68.2 percent overall and failed the test.

In March 2019, Walden filed an employee grievance, alleging that GE breached the CBA by not promoting him to toolmaker despite his having the requisite experience and seniority.  (D.N. 108-20, PageID.1204)  GE maintained that there was "no contract violation." (D.N. 113-29, PageID.1853)  According to GE, Walden was aware of the long-standing testing requirement for the toolmaker positions.  (*Id.*, PageID.1853)  But GE stated that it would allow Walden to test again when another toolmaker position opened. [1]  (*Id.*; D.N. 116-1, PageID.1938–39)  Walden filed a discrimination charge against GE with the Equal Employment Opportunity Commission

---

[1] Another January 2019 applicant, Brian King, also filed a grievance after he failed the toolmaker test.  (D.N. 113-30)  GE again found no contract violation, but it allowed King to retest at the next opportunity.  (D.N. 113-30)  King retook the test when positions opened later that year, passed, and ultimately became a toolmaker.  (D.N. 113-28, PageID.1822, 1828; D.N. 113-7, PageID.1620)  Brian King is 16 years younger than Walden but had more seniority.  (D.N. 113-28, PageID.1811–12; D.N. 113-6, PageID.1604)

(EEOC) that May where he claimed that he was not promoted to toolmaker because of his age. (D.N. 108-29)  The EEOC issued a right-to-sue notice in August 2019, stating that it could not conclude that GE violated the law.  (D.N. 108-30)

Three months later, Walden filed the present suit against GE and the Union.  (D.N. 1) Senior Judge McKinley dismissed some of his claims (D.N. 16), and Walden then filed an amended complaint asserting the two claims that remain: age discrimination under the ADEA and a violation of § 301 of the LMRA.[2]  (D.N. 21)

After Walden filed suit, the Union considered taking his grievance to arbitration.  (D.N. 113-21, PageID.1759)  The Union decided against doing so, reasoning that (1) GE would likely prevail and (2) Walden had just filed, in May 2020, a charge with the National Labor Relations Board (NLRB), which, if successful, would have afforded Walden the same relief as arbitration. (D.N. 113-21, PageID.1764–66; D.N. 108-25)  A month later, the regional NLRB office dismissed Walden's charge, and the NLRB's general counsel affirmed the dismissal on appeal.  (D.N. 113-34; D.N. 108-28)  The NLRB found that the Union did not violate its duty of fair representation to Walden during the grievance process, when it decided not to pursue arbitration, or at any other time since Walden failed his first toolmaker test in 2018.  (D.N. 108-28, PageID.1215–16); *see* 29 U.S.C. § 158(b).

The defendants now move for summary judgment.  (D.N. 107; D.N. 108)  They argue that Walden's ADEA claim fails because he was not qualified for the toolmaker position.  (D.N. 107-

---

[2] In its motion, GE also addressed a claim for hostile work environment that Walden asserted in his original complaint.  (D.N. 108, PageID.1105–07)  But Walden did not plead that claim in his amended complaint.  (*See* D.N. 21)  The Court need not rule on a claim that is no longer before it. Moreover, Walden did not address the claim in his response to GE's motion, so he abandoned any hostile-work-environment claim he may have had.  *See Alexander v. Carter for Byrd*, 733 F. App'x 256, 261 (6th Cir. 2018) (citation omitted).

1, PageID.855; D.N. 108, PageID.1087)  As to Walden's LMRA claim, GE argues that the claim is precluded by the NLRB decision and fails on the merits (D.N. 108, PageID.1107–11); the Union contends that it treated Walden fairly.  (D.N. 107-1, PageID.855)  Walden moves for leave to file a sur-reply.  (D.N. 117)  The Court will address Walden's motion before turning to the motions for summary judgment.

## II.

In support of his motion to file a sur-reply, Walden contends that GE's motion for summary judgment "introduced one significant claim and 'declaration' from Tim Riggs that is misleading to the Court regarding GE's discriminatory treatment of Walden, alleging that Walden was given the same opportunity to review test results as Brian King."  (D.N. 117, PageID.2112)  Judge Brennenstuhl recommends that the Court deny the motion, finding that Walden's proposed sur-reply merely "repeats and expands upon the same argument made in his Response that King was provided preferential treatment."   (D.N. 126, PageID.2144)    Walden  timely  objected  to  Judge  Brennenstuhl's recommendation, disagreeing with the finding that his sur-reply is an attempt to have the final say. (D.N. 127, PageID.2146)

The Court reviews de novo the "specified proposed findings or recommendations to which an objection is made."  28 U.S.C. § 636(b)(1).  "Generally speaking, sur-replies are 'highly disfavored, as they are usually a strategic effort by the nonmoving party to have the last word on a matter.'"  *Cousins Smokehouse, LLC v. Louisville Processing & Cold Storage, Inc.*, 588 F. Supp. 3d 753, 763 (W.D. Ky. 2022) (quoting *Disselkamp v. Norton Healthcare, Inc.*, No. 3:18-CV-48-GNS, 2019 WL 3536038, at *14 (W.D. Ky. Aug. 2, 2019)).  Although neither the Federal Rules of Civil Procedure nor the local rules of the Court expressly permit the filing of sur-replies, *see* Fed. R. Civ. P. 7; L.R. 7.1(c), "such filings may be allowed in the appropriate circumstances,

6

especially '[w]hen new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated.'" *Key v. Shelby Cnty.*, 551 F. App'x 262, 265 (6th Cir. 2014) (quoting *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003)).  When a reply "present[s] no new evidence or arguments," however, leave to file a sur-reply should be denied.  *Id.*; *see, e.g.*, *Carter v. Paschall Truck Lines, Inc.*, 364 F. Supp. 3d 732, 748 (W.D. Ky. 2019) (denying leave when the defendant "did not make a new submission or argument in its Reply" and the information raised in the sur-reply "was already before the Court").

Walden's sur-reply is not warranted here.  Walden claims that he needs to respond to new evidence, but his proposed sur-reply reiterates an argument that he has already made—that King and Crowley were treated more favorably than he was.  (*See* D.N. 113; D.N. 117-1)  Indeed, Walden cites his Response in his proposed sur-reply, stating: "As described more in the Response already filed, GE practically bent over backwards . . . to allow Brian King and Keith Crowley, two significantly younger employees, to be awarded tool maker positions." (D.N. 117-1, PageID.2116)

In support of his objection, Walden cites *Best v. James*, No. 3:20-CV-299-RGJ, 2023 U.S. Dist. LEXIS 4180, at *3-4 (W.D. Ky. Jan. 10, 2023), as authority that "[t]he Court has allowed sur-replies under similar, and seemingly even less warranted circumstances." (D.N. 127, PageID.2147)  In *Best*, however, the plaintiffs did not respond to the defendants' motion to file a sur-reply, so they conceded the defendants' arguments. *Id.*  Here, unlike in *Best*, GE has responded and opposes Walden's motion.  (D.N. 121)  And as Judge Brennenstuhl found (D.N. 126, PageID.2144), Walden's sur-reply is simply an attempt to have the last word.  The Court will therefore adopt Judge Brennenstuhl's report and recommendation and deny Walden's motion.

# III.

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of specifying the basis for its motion and identifying the portion of the record that demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute."  Fed. R. Civ. P. 56(c)(1).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson*, 477 U.S. at 252.  As explained below, Walden's claims do not survive this standard.

## A.    ADEA Claim

Under the ADEA, the plaintiff must "prove by a preponderance of the evidence . . . that age was the 'but-for' cause of the challenged employer decision."  *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 323–24 (6th Cir. 2021) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009)).  When there is no direct evidence of age discrimination, courts apply the *McDonnell*

8

*Douglas* burden-shifting framework.  *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–06 (1973)).  First, the plaintiff must make a prima facie case of age discrimination.  *Id.* (citing *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 887 (6th Cir. 2020)).  At this stage, Walden must show "that (1) he is a member of a protected [age] class; (2) that he applied for, and did not receive, a job; (3) that he was qualified for the job; and (4) that a similarly-situated person who was not in [his] protected class received the job."  *Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506, 515 (6th Cir. 2003) (citing *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1166 (6th Cir. 1996)).  If Walden makes the required showing, "the burden shifts to the defendant, who must give legitimate, non-discriminatory reasons for the adverse employment decision."  *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 547 (6th Cir. 2004) (citing *LaPointe v. United Autoworkers Loc. 600*, 8 F.3d 376, 379 (6th Cir. 1993)).  If the defendant does so, "the burden shifts back to the plaintiff[], who must establish that the legitimate reasons offered . . . were just a pretext for decisions actually motivated by an unlawful bias against age."  *Id.*  Here, the defendants argue that Walden has not established the third and fourth elements of the prima facie case.  (D.N. 107-1; D.N. 108)  The Court will consider the third element before turning to the fourth.

### 1.    Third Element of the Prima Facie Case

According to the defendants, Walden was not qualified for the 2018 and 2019 toolmaker positions he because he failed the requisite test.  (*Id.*)  To determine if a plaintiff "has presented sufficient evidence of qualification to support a prima facie case, the Court must only consider [his] objective qualifications."  *Davis v. Univ. of Louisville Physicians, Inc.*, No. 3:19-CV-849, 2021 WL 5452163, at *9 (W.D. Ky. Nov. 22, 2021) (internal quotations omitted) (quoting *Highfill v. City of Memphis*, 425 F. App'x 470, 473 (6th Cir. 2011)).  If the plaintiff failed to pass a qualifying examination required for the position at issue, he is not qualified for the position and

cannot satisfy *McDonnell Douglas*'s third prong.  *See Highfill*, 425 F. App'x at 474; *Garrison v. Gambro, Inc.*, 428 F.3d 933, 937–38 (10th Cir. 2005) (affirming summary judgment for employer when employees failed test required for newly created, higher-paying positions, even though "those positions involved essentially the same assembly work as their previous jobs"); *Otto v. City of Newport*, No. 12-19-DLB-CJS, 2013 WL 5743909, at *4 (E.D. Ky. Oct. 23, 2013) (holding that plaintiff was not qualified to be a police officer because he repeatedly failed firearms tests).  In *Highfill*, for instance, a firefighter lost his job because he failed to pass the written component of his employer's firefighter-certification exam.  *Highfill*, 425 F. App'x at 472.  The Sixth Circuit held that because the firefighter's employment contract conditioned his retention on passing that test, his failure to pass it meant that he was not qualified for the position.  *Id.*

### a.    The 2018 Test

Walden fails to establish that he was qualified for the 2018 toolmaker openings because he cannot show that he passed the toolmaker test.  Riggs testified that the passing score on the 2018 test was 85 percent, and there is no record evidence refuting this statement.  (D.N. 113-6, PageID.1571)  Walden's test clearly shows five questions marked as incorrect, resulting in a score of only 80 percent.  (D.N. 108-10)  Nevertheless, Walden contends that he actually *did* pass the 2018 test.  He rests this argument on the fact that Riggs's testimony is the only clear evidence that the test's passing score was 85 percent since the passing score was not in writing anywhere.  (D.N. 113, PageID.1263, 1270 (citing D.N. 113-6, PageID.1571))  He maintains that Riggs "seemingly made up that a person had to score 85% on the test to pass" after all three applicants had taken the test, accusing Riggs of *ad hoc* setting the passing score right above what Walden scored to ensure that Walden did not get the job.  (*Id.* at 1255; *see id.* at 1262 (asserting that evidence of the 85-

percent threshold did not come out until the EEOC proceeding))  Walden claims that "[t]he 85% passing score is a farce" and that "GE made it up as pretext."  (*Id.* at 1278)

Walden offers no evidence to support this argument, however.  "In order to survive summary judgment, [the p]laintiff cannot rely on conjecture or conclusory accusations." *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008).  The nonmovant must instead present "significant probative evidence" that the movant's proffered material fact is disputed.  *Green Genie, Inc. v. City of Detroit*, 63 F.4th 521, 526 (6th Cir. 2023) (citing *Wiley v. City of Columbus*, 36 F.4th 661, 667 (6th Cir. 2022)).  Here, Walden offers no evidence that there was no set passing score or that the passing score was below 80 percent.  Absent such evidence, Riggs's testimony is undisputed.

Walden attempts to undermine Riggs's testimony about the passing score by arguing that previous applicants got the toolmaker job despite submitting tests that should have scored below 85 percent.  Many correct answers on passing candidates' tests—including Bryant's—do not exactly match the test's answer key.  (D.N. 113, PageID.1270–71; *see* D.N. 108-9, PageID.1172–74; D.N. 113-17, PageID.1712–14)  Walden argues that 85 percent cannot be the true passing score because other testers would have scored below 85 percent if their non-matching answers had been counted as incorrect.[3]  (D.N. 113, PageID.1271, 1278)

Walden accuses Riggs of leniently grading his competitors' tests to ensure that they passed and Walden failed.  (*See id.*)  But this argument overlooks the fact that Walden also received credit

---

[3] Walden also argues that Riggs's statements to him about how he and his peers performed on the test revealed that the passing score was lower than Riggs claimed.  Walden claims that Riggs told him that the other two applicants who took the test missed four questions, while Walden missed six.  (D.N. 113-4, PageID.1463–64)  He says that "on a 25-question test, [missing four questions] would result in a score of only 80%," the same score he achieved.  (D.N. 113, PageID.1255)  But Walden's math is incorrect; the score would be 84 percent.

for several answers that do not exactly match the answer key.  For example, he complains that Bryant received credit on question number 10 for writing "heat" when the answer key says "draw it back."  (*Id.* at 1261; *see* D.N. 108-9, PageID.1173; D.N. 113-17, PageID.1713)  But Walden's answer to question number 10 does not match the answer key, either: his two-line response does not include the phrase "draw it back."  (D.N. 108-10, PageID.1178)  In a sworn declaration, Riggs states that he counted both Bryant's and Walden's answers as correct because he determined, using his professional judgment, that their responses were substantially just as correct as the answer key, despite not matching the answer key verbatim.  (*See* D.N. 116-5, PageID.2092–93)  The record demonstrates that Riggs has accepted answers that do not perfectly match the answer key on every toolmaker test going back to 2016, including Walden's.  (*See, e.g.*, D.N. 113-19, PageID.1723 (counting applicant's response of "Rockwell tester" as correct for question 3 when the answer key says "with a file"))  The evidence therefore does not support Walden's contention that other applicants were graded more leniently than him.  *Cf. Smith v. City of Toledo*, 13 F.4th 508, 518 (6th Cir. 2021) (rejecting plaintiff's claim that qualification test was rigged against him because there was no evidence that his "testing and training conditions were materially different (and worse) than those used to prepare and test the other recruits"); *see also Garrison*, 428 F.3d at 938 (concluding that alleged "disturbing procedural irregularities" in employer's testing practices did not give rise to genuine factual dispute as to the plaintiff's lack of qualifications for the position). In sum, Walden's argument that Riggs favored his competitors rests on speculation and conclusions unsupported by the evidence, which is insufficient to survive summary judgment.  *See Arendale*, 519 F.3d at 605 ("Conclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment.").

Next, Walden questions whether Bryant completed his test on his own. (D.N. 113, PageID.1256)  Walden bases this suspicion on Bryant's testimony that he does not remember being called back to answer the five additional test questions (D.N. 113, PageID.1260 (citing D.N. 113-10, PageID.1659)) and could not verify that he wrote all the answers on the test.  (*Id.* (citing D.N. 113-10, PageID.1666))  Bryant's failure to remember those details of the test, however, is not evidence that he did not actually complete the test.  *See Griffin v. Biomat USA, Inc.*, No. 1:19-CV-604-ECM, 2022 WL 417739, at *1 (M.D. Ala. Feb. 10, 2022) (holding that "a witness's failure to recall an incident [can]not in itself establish a genuine dispute of material fact").  Riggs's testimony, Brown's testimony, and the graded tests show that all three 2018 applicants answered twenty-five questions.  (*See* D.N. 113-6, PageID.1564–66; D.N. 113-11, PageID.1685–86; D.N. 108-8; D.N. 108-9)  Bryant's testimony does not rebut this evidence.

Despite ample record evidence to the contrary, Walden also suggests that passing the test was not even required for the toolmaker position.  He points to GE's job posting for the 2018 position, which does not say that one must pass a test to get the job.  (D.N. 113-2, PageID.1313)  The posting does say, however, that the "job classifications and definitions are merely for purposes of identification and general description and do not purport to be all inclusive or exhaustive of the actual requirements of any job."  (*Id.*)  This language indicates that otherwise qualified applicants might also need to meet other requirements not specified in the posting.  Walden contends that this language only means that a toolmaker's duties may not exactly match the job description and that the disclaimer has nothing to do with the job's required qualifications.  (D.N. 113, PageID.1281–82)  But even if that interpretation were correct, Walden cites no authority stating that every job qualification must be mentioned in a written job posting.  Multiple witnesses stated that testing has been used for the toolmaker position since at least 2016 and that no one who failed the test has

ever been hired as a toolmaker.  (D.N. 116-1, PageID.1918; D.N. 113-27, PageID.1795–96; D.N. 116-5, PageID.2094)  Walden presents no evidence rebutting this testimony, leaving no basis for a reasonable jury to find that passing the test was not a required qualification.

### b.    The 2019 Test

Walden likewise fails to show that he was qualified for the 2019 toolmaker openings because there is no genuine dispute as to the fact that he also failed the 2019 test.  The record evidence shows that the passing score for the 2019 test was 70 percent, after averaging the scores on the written and hands-on portions.  (D.N. 108-6, PageID.1154-56; D.N. 108-14, PageID.1193–96)  Walden scored above passing on the written portion, but his score of 16 percent on the hands-on portion was so low that he could not have averaged 70 percent on the whole test no matter how well he did on the written test.  (D.N. 108-16, PageID.1200; D.N. 116, PageID.1901)  Again, like the firefighter in *Highfill*, who was no longer qualified to be a firefighter after he failed to pass the certification exam, Walden was not qualified to become a toolmaker because he failed the toolmaker test.  *See* 425 F. App'x at 474.

Walden additionally argues that passing the test could not have been a true requirement for the toolmaker position because a successful applicant, Crowley, did not pass the 2019 test either.[4] According to Walden, "GE had to change the score of the tests two or three times to make a claim that Crowley actually passed the test."  (D.N. 1113, PageID.1271)  Walden asserts that his union steward initially told him that the union steward had heard that the passing score was 75; however,

---

[4] Walden also argues, as he did before, that testing was not a required qualification for the 2019 position because the job posting did not mention it. (D.N. 113, PageID.1269–70 (citing D.N. 113-2; D.N. 113-26))  The Court rejects that argument for the same reasons explained above regarding the 2018 job posting. *See supra* Section III.A.1.a.

14

Walden later learned that it was only 70 percent.[5]  (D.N. 113-4, PageID.1409–10)  Walden next mentions that GE did not count two portions of the written test, which raised Crowley's written score from 72 percent to 75 percent.  (D.N. 113, PageID.1264–65, 1271)  Finally, Walden points out that Crowley's combined average test score was 69.6 percent, which GE rounded up to exactly 70 percent.  (*Id.* at 1272)  Walden asserts that GE "likely" lowered the total passing score, eliminated the test sections, and rounded up Crowley's score in a deliberate effort to manipulate the results and let Crowley became a toolmaker.  (*Id.*)

Walden's theory again finds no support in the record.  The mere facts that Walden's steward told him that the passing score was higher than it actually was; that GE decided not to score certain sections of the test; and that GE rounded the average test scores to the nearest whole number do not, by themselves, show that GE manipulated the testing process to help Crowley. Nor do those facts show that the testing requirement did not actually exist.  Instead, the evidence shows that GE and the Union agreed not to count portions of the written test because they were not relevant to the toolmaker position.  (D.N. 116-1, PageID.1935–36)  And because the total test score would be the average of two separate sections, GE and the Union agreed that it was most fair to round the final score to the nearest whole number.  (D.N. 116-5, PageID.2093–94)

Walden also argues that Crowley was not qualified to be a toolmaker because his job application does not show that he had five years of toolmaking experience before becoming a GE toolmaker.  (D.N. 113, PageID.1271 (citing D.N. 113-33))  But Crowley's application shows that his two previous jobs before arriving at GE were "Tool Shop Manager" and "Tool Room Supervisor," and his tenure in those positions was almost twenty years when he applied to GE.

---

[5] Even if this piece of evidence created a dispute of material fact for trial, it is likely inadmissible hearsay.  *See* Fed. R. Evid. 801(c).

(D.N. 113-33, PageID.1884)   When Crowley applied, Riggs spoke with him to confirm his experience, and based on that conversation, Riggs concluded that Crowley had the years of experience required for the toolmaker job.   (D.N. 116-5, PageID.2093)   Even if Crowley's experience appears insufficient to Walden, "as the one who creates the position in question, the employer largely enjoys the right to decide the qualifications it prefers in one who holds the position and, it follows, whether an applicant lacks the necessary knowledge or experience." *Flowers v. WestRock Servs., Inc.*, 979 F.3d 1127, 1131 (6th Cir. 2020).   Walden has not shown that Crowley did not pass the test or was otherwise unqualified for the 2019 position.   Nor has he shown that the 2019 testing requirement was fabricated.   In sum, Walden's attempt to create a dispute as to the existence of the testing requirement for the 2019 position is based on "conspiratorial theories" instead of "the specific facts required under [Rule 56]."   *Mulhall v. Ashcroft*, 287 F.3d 543, 552 (6th Cir. 2002); *see also Evans v. Pro. Transp., Inc.*, 614 F. App'x 297, 302 (6th Cir. 2015) (terming employee's contention that his boss deliberately delayed responding to his complaints about subordinate so employee would discipline subordinate himself and give his boss cause to fire him "an unsupported conspiracy theory"); *Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991) (en banc) (holding that summary judgment was appropriate where the inferences plaintiff sought to draw from evidence were akin to "flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from [personal] experience").

Viewing the evidence in the light most favorable to Walden, the Court finds no genuine dispute as to the third element of his prima face case.   The evidence shows that Walden failed the toolmaker tests required for the 2018 and 2019 toolmaker positions.   He was thus unqualified for the positions.   *See Highfill*, 425 F. App'x at 473–74.

### 2.      Fourth Element of the Prima Facie Case

GE also contends that Walden has not established the fourth element of the prima facie case.  (D.N. 108, PageID.110)  GE argues that Walden cannot show that he was similarly situated to the younger applicants who earned the toolmaker positions because the successful applicants passed the test, while he did not.  (*Id.*)  "In a failure to promote claim, the emphasis in the fourth element is on the relative qualifications of the plaintiff and the employee who actually received the promotion."  *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 814 (6th Cir. 2011).  Walden need not "show identical qualifications to" the selected toolmakers; instead, he must show that his qualifications were "similar."  *Id.*

Walden has not shown that he has similar qualifications to the successful toolmakers because, unlike them, he failed the required test.  *See Smith*, 13 F.4th at 515.   Walden again disputes that the successful toolmaker applicants passed the test and argues that the test was not a real requirement for the job.  (D.N. 113, PageID.1275)  According to Walden, he was entitled to the job pursuant to the CBA, "so it does not really matter what the scores on the test were."  (*Id.*)  But the Court has already explained in detail why Walden's position lacks merit.  *See supra* Section III.A.1.  Walden has not put forth evidence of any employee who truly failed the test but was still promoted to toolmaker.  "It appears, therefore, that [Walden] has failed to identify anyone, of any [age], who was similarly situated to him but treated better."  *Smith*, 13 F.4th at 515 (citing *Arucan v. Cambridge E. Healthcare Ctr./Sava Seniorcare, LLC*, 763 F. App'x 415, 420 (6th Cir. 2019)  Because Walden has not established the third and fourth elements of his prima facie case, his age-discrimination claim cannot survive summary judgment.

17

B.      **LMRA Claim**

As to his second and final claim, Walden argues that GE breached the CBA by failing to promote him to toolmaker and that the Union did not provide him fair representation throughout the grievance procedures.   (D.N. 113, PageID.1272, 1281)   Walden describes the Union's representation of him as "unfair and wholly ineffective." (*Id.*)  He contends that the Union pursued Brian King's grievance more aggressively than his, "ignore[ed] him throughout the process," and irrationally declined to arbitrate his grievance.  (*Id.*, PageID.1273–74)  The Union argues that it handled Walden's grievance fairly, and that GE did not breach the CBA.  (D.N. 107-1)  GE also asserts that Walden's claim is precluded by the NLRB's decision on the charge Walden filed. (D.N. 108, PageID.1108)

If the NLRB has already examined an issue that a party seeks to relitigate in a LMRA suit, reviewing courts must apply "the classic test for issue preclusion."  *Olchowik v. Sheet Metal Workers' Int'l Ass'n*, 875 F.2d 555, 557 (6th Cir. 1989).  The party is precluded from relitigating the issue in court if (1) the issue is identical to the one the NLRB decided; (2) the issue was necessary to the earlier judgment; and (3) the party against whom preclusion is sought had a full and fair opportunity to litigate the issue.  *Id.*  A party had a fair opportunity to litigate if it had every incentive to do so "fully and vigorously."  *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 332 (1979).  Issue preclusion applies equally whether the party against whom preclusion is sought is a plaintiff or a defendant.  *See McAdoo v. Dallas Corp.*, 932 F.2d 522, 525 (6th Cir. 1991) (precluding plaintiff from relitigating causation issue in federal court after it was decided against him in full and fair state-court case).

Here, Walden's LMRA claim is precluded because the NLRB decided an essential issue against him.  To make a prima facie LMRA case, the employee must show (1) "breach of a

collective bargaining agreement by the employer" and (2) "breach of the duty of fair representation by the union." *Garrison v. Cassens Transp. Co.*, 334 F.3d 528, 538 (6th Cir. 2003) (quoting *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 583 (6th Cir. 1994)).   "Unless a plaintiff demonstrates both violations, he cannot succeed against either party." *Id.* (quoting *Bagsby v. Lewis Bros. of Tenn.*, 820 F.2d 799, 801 (6th Cir. 1987)) (internal quotation marks omitted).   A union breaches its duty of fair representation only when its actions are "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967).   If a union's subpar representation amounts to mere negligence, the employee cannot maintain his LMRA claim.   *United Steelworkers v. Rawson*, 495 U.S. 362, 372–73 (1990).

Here, the NLRB decided that the Union did not violate its duty of fair representation to Walden.   (*See* D.N. 113-34, PageID.1888; D.N. 108-28, PageID.1215)   The board found that any shortcomings on the Union's part "amount[ed] to mere negligence." (D.N. 113-34, PageID.1889)   In other words, the NLRB has already decided that Walden did not satisfy LMRA's second element.   The NLRB dismissed Walden's claim because it determined that the Union treated him fairly.   (D.N. 108-28)   Whether the Union breached its duty of fair representation was therefore necessary to the NLRB's decision because that was the sole basis on which it dismissed Walden's claim.   *See Garrison*, 334 F.3d at 538.   Further, Walden had just as much incentive to vigorously litigate his NLRB claim as he does this lawsuit, and he does not contend that any part of the NLRB process was unfair or hindered him from pursuing his claims.   *See Parklane Hosiery*, 439 U.S. at 332.   Thus, all three elements of issue preclusion are met.   *See Olchowik*, 875 F.2d at 557.

Walden argues that the NLRB did not decide an identical issue to the one he is asking the Court to decide here because the agency considered narrower circumstances than he presents in this case.   He asserts that the NLRB did not consider, for instance, the Union's decision not to

arbitrate his claim or any of the Union's actions from before November 2019.   (D.N. 113, PageID.1279)  But while the regional NLRB director's initial decision does not directly address those issues (*see* D.N. 113-34), the appellate decision from the NLRB's general counsel clarifies that the agency considered both the Union's decision to forgo arbitration and its pre-November 2019 conduct.  (D.N. 108-28, PageID.1216)  Walden also argues that he could not have had a full and fair opportunity to litigate his claims because he appeared before the NLRB pro se.  (D.N. 113, PageID.1280)  But "the absence of counsel does not preclude application of collateral estoppel." *In re Kane*, 212 B.R. 697, 701 (Bankr. D. Mass. 1997); *accord In re Tsamasfyros*, 940 F.2d 605, 607 (10th Cir. 1991) ("We reject any suggestion that because Tsamasfyros appeared *pro se* in the state court proceeding, collateral estoppel is inapposite.").  Multiple cases within this circuit have applied issue preclusion even when the plaintiff appeared pro se before the earlier decision maker. *See, e.g.*, *Otworth v. Fifth Third Bank*, No. 20-1286, 2020 WL 9211025, at *2–3 (6th Cir. Oct. 27, 2020); *McCord v. Kentucky Educ. Ass'n*, No. CV 5: 17-286-DCR, 2017 WL 5162817, at *3 (E.D. Ky. Nov. 7, 2017), *aff'd sub nom. McCord v. Brooks, McComb & Fields, LLP*, No. 17-6459, 2018 WL 8514480 (6th Cir. Dec. 12, 2018).

Even if Walden's LMRA claim were not precluded, it would fail on the merits.  GE and the national union's collective bargaining agreement specifies that GE will upgrade the employee with seniority to a higher-paying open position only if that employee is "qualified for such upgrading." (D.N. 108-3, PageID.1134)  Further, GE's agreement with the Union's local chapter says that promotions "will be awarded on the basis of Total Plant Seniority to those employees that *possess the minimum qualifications*."  (D.N. 108-4, PageID.1139 (emphasis added))  As explained previously, Walden did not possess the minimum qualifications for the toolmaker

position because he did not pass the toolmaker test.   Therefore, Walden fails to show that GE breached the CBA, and his LMRA claim fails.[6]   *See Garrison*, 334 F.3d at 538.

**IV.**

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)      Communications Workers of America's motion for summary judgment (D.N. 107) is **GRANTED**.

(2)      General Electric International, Inc.'s motion for summary judgment (D.N. 108) is **GRANTED**.

(3)      Walden's objection (D.N. 127) is **OVERRULED**.

(4)      The Findings of Fact, Conclusions of Law, and Recommendation of Magistrate Judge H. Brent Brennenstuhl (D.N. 126) are **ADOPTED** in full and **INCORPORATED** by reference herein.   Walden's motion for leave to file a sur-reply (D.N. 117) is **DENIED**.

(5)      A separate judgment shall issue this date.

January 22, 2024

**David J. Hale, Judge**
**United States District Court**

---

[6] Because GE and the Union are entitled to summary judgment on this ground, the Court need not decide whether the Union fairly represented Walden.   *See Garrison*, 334 F.3d at 538.